**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-21350-CIV-CMA**

ILC DOVER LP,

      Plaintiff,

vs.

FLOODBARRIER, INC.,

      Defendant.

_____

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

ILC Dover LP ("Plaintiff" or "ILC Dover"), by its undersigned attorneys, brings this

amended complaint for patent infringement against FloodBarrier, Inc. ("Defendant" or

"FloodBarrier") and hereby alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for infringement of United States Patent Nos. 9,453,314 (the

"'314 patent"); 9,453,316 (the "'316 patent") and 9,303,423 (the "'423 patent") (collectively, the

"Asserted Patents") under the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq*.,

including §§ 271(a)-(c), arising from FloodBarrier's manufacturing, offers for sale and sales of

flexible, deployable flood mitigation products, and intent to continue to manufacture, offer for

sale and sell the same, before the expiration of the Asserted Patents.

2.      A true and correct copy of the '314 patent is attached as Exhibit 1.  A true and

correct copy of the '316 patent is attached as Exhibit 2.  A true and correct copy of the '423

patent is attached as Exhibit 3.

3.      All rights, title and interest in the Asserted Patents have been assigned to ILC

Dover, who is the sole owner of the Asserted Patents.

## THE PARTIES

4.      ILC Dover is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Moonwalker Road, Frederica, Delaware 19946-2080.

5.      ILC Dover is a manufacturer of globally recognized flexible containment solutions, serving customers in a diverse range of industries, including pharmaceuticals, aerospace, and defense.  ILC Dover's products include flood mitigation barriers such as deployable walls, gates, and tunnel plugs.

6.      FloodBarrier is a For Profit corporation of Florida, having its principal place of business at 7314 NW 46th Street, Miami, Florida 33166, and may be served through its attorneys of record in this case.

7.      FloodBarrier manufactures flood loss prevention products including flexible, deployable flood mitigation products.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, including §§ 271(a)-(c).  This Court has original subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

9.      This Court has personal jurisdiction over FloodBarrier as FloodBarrier is a Florida organization, incorporated under the laws of Florida.  FloodBarrier, by virtue of, *inter alia*, its status as a Florida corporation, having availed itself of the rights and benefits of Florida law, should reasonably anticipate being haled into court in this judicial district.

10.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

### ILC Dover

11.　　International Latex Corporation, which supported American efforts in World War II with latex products such as attack boats, life rafts, and canteens, was formed in 1932.  In 1947, International Latex Corporation split into four divisions, one of which eventually became ILC Dover.

12.　　ILC Dover's earliest work was developing high-altitude pressure helmets and high-altitude pressure suits for the U.S. Navy and Air Force.  In 1965, ILC Dover was awarded the prime contract for the Apollo Lunar Space Suit, and successfully designed and manufactured the space suits worn by astronauts in the Apollo program, including Neil Armstrong during the first moonwalk.

13.　　In 1974, when the Skylab program ended, ILC Dover diversified into other product offerings based on their expertise in soft goods (i.e., flexible barriers), such as aerostats for the U.S. Air Force, and personal protective equipment, including military chemical, biological, radiological and nuclear (CBRN) masks and hoods.  ILC Dover's products included the M40/M42 masks which became the standard field masks of the U.S. Army, with over two million sold as of 2010.  ILC Dover's experience in designing and manufacturing soft goods and implementing products containing soft goods now spans more than 60 years.

14.　　In 1994, NASA's Jet Propulsion Laboratory engaged ILC Dover to develop and manufacture the airbag landing system for the Mars Pathfinder Mission, which successfully cushioned Pathfinder's landing on Mars on July 4, 1997.

15.　　Also during the 1990s, ILC Dover entered the pharmaceutical industry with the design and production of flexible containment systems used to improve operator safety and ensure product purity during the manufacturing of pharmaceutical agents.

3

16.     Since the early 1970s, ILC Dover has been designing and manufacturing soft goods for aerostats, airships, blimps and other lighter-than-air ("LTA") structures, and is the world's largest producer of modern aerostat and airship envelopes.

17.     More recently, ILC Dover applied its expertise in flexible materials and containment systems to develop flood safeguard systems. Several of its novel flexible, deployable flood mitigation products are covered by the Asserted Patents.

18.     ILC Dover is currently manufacturing and offering for sale, and selling its flexible, deployable flood mitigation products that embody the inventions protected by its patents and is in a position to satisfy the full amount of market demand for such products.

19.     The flexible, deployable flood mitigation products ILC Dover manufactures and sells fall into product categories, for example vertically-deployed products and horizontally-deployed products, and the products in each category have similar designs and features. However, each product is custom designed for the particular location in which it will be installed, for example, a particular opening to a building or entrance to a public transit station.

20.     In commercially promoting its flexible, deployable flood mitigation products, including those falling within at least one claim of the Asserted Patents, ILC Dover has worked extensively with the Port Authority of New York and New Jersey (hereinafter "Port Authority") and other governmental entities that service the greater New York City area. For example, ILC Dover has worked closely with the Port Authority to define specifications for flexible, deployable flood mitigation products, and installations of the same, for all or nearly all of the buildings and zones of buildings that the Port Authority wished to protect.

21.     As a result, the Port Authority has required that flexible, deployable flood mitigation products installed at its facilities either be ILC Dover products, or products "comparable" or "equal" to ILC Dover products.

22.     For example, the March 2, 2017 Section 10711 of the Port Authority's requirements for "FLOOD BARRIER ASSEMBLIES" requires in "PART 2 – PRODUCTS," in sub-section 2.01 titled "MANUFACTURERS," that products be "indicated or comparable products" to several manufacturers, and the first listed manufacturer is "ILC Dover LP, Frederica, DE."[1]  FloodBarrier, in contrast, is not listed as one of the "MANUFACTURERS."

**PART 2 - PRODUCTS**

2.01    MANUFACTURERS

    A.    Subject to compliance with requirements, provide products indicated or comparable products by one of the following:

        1.    ILC Dover LP, Frederica, DE.

        2.    Presray Corporation, Wassaic, NY

        3.    PS Doors, Grand Forks, ND

        4.    Walz & Krenzer, Inc., Oxford, CT

        5.    Flood Break Automatic Floodgates, Houston, TX.

        6.    Flood Control America, LLC, Herndon, VA.

        7.    Approved equal.

23.     The same document, in "PART 2 – PRODUCTS," in sub-section 2.02 titled "FLEXIBLE MEMBRANE FLOOD BARRIER SYSTEMS," lists ILC Dover but no other company:

---

[1]     ILC Dover has produced the documents referred to in Paragraphs 22, 23, 24, 57, 60, 61, 63, 65, 137, 138, 139, 141, 144 and 146 to FloodBarrier.

2.02 FLEXIBLE MEMBRANE FLOOD BARRIER SYSTEMS

    A.    **TYPE A**: Vertically Deployed Barrier.

        1.    Basis of Design Products:

            a.    Vertically Deployed Flex-Wall as manufactured by ILC Dover LP, Frederica, DE.

    B.    **TYPE B**: Side Deployed Barrier.

        1.    Basis of Design Products:

            a.    Side Deployed Flex-Wall as manufactured by ILC Dover LP, Frederica, DE.

    C.    **TYPE C**: Over-head Deployed Barrier.

        1.    Basis of Design Products:

            a.    Portal Flex-Gate as manufactured by ILC Dover LP, Frederica, DE.

24.      By way of further example, the March 5, 2019 Section 107120 of the Port Authority's requirements for "FLEXIBLE MEMBRANE BARRIER" requires in "PART 2. PRODUCTS," in sub-section 2.01 titled "MANUFACTURERS," that products be "furnish[ed] and install[ed] products of one of the following manufacturers, or approved equal," and one of the listed manufacturers is "ILC Dover LP, Frederica, DE." FloodBarrier, in contrast, is not listed as one of the "MANUFACTURERS."

**PART 2.**    **PRODUCTS**

**2.01**  MANUFACTURERS

    A.    Subject to compliance with requirements of this Section, furnish and install products of one of the following manufacturers, or approved equal:

      1.    Flood Control America, LLC, Herndon, VA.

      2.    ILC Dover LP, Frederica, DE.

      3.    Presray Corporation, Wassaic, NY.

**<u>The Asserted Patents</u>**

25.      The Asserted Patents relate generally to flexible, deployable flood mitigation products to prevent damage from flooding.

26.     The '314 patent is entitled "Deployable Flexible Flood Mitigation Wall," issued on September 27, 2016, and names David Phillip Cadogan, Jonathan Michael Hinkle, Charles Ralph Sandy and Carl Frank Knoll Jr. as inventors.

27.     The '314 patent describes flexible, deployable flood mitigation products made of a textile/membrane material wall and support posts that together are designed to form a barrier against flood water or other fluids.  The barrier is movable between a stowed and deployed position.  The invention described in the '314 patent can be used to protect areas susceptible to flooding, including building entrances and transit system stairwells.

28.     By way of example, claim 1 of the '314 patent recites:

1. A deployable flexible fluid retention wall system comprising:

> a membrane flexible wall; the flexible wall comprising at least a lower end thereof;

a series of rigid posts that support the flexible wall;

a trench; a cover for the trench;

> each of the series of posts being initially contained within the trench and beneath the cover when the posts are in a stowed position such that the posts are protected from exposure to the environment by the cover for the trench; the posts comprising a quadrilateral exterior surface on at least a lower end of each post;

> the trench further comprising a mounting plate at the bottom of the trench; and the mounting plate additionally comprising a plurality of receivers, each receiver being integral with the mounting plate and quadrilateral in shape, and sized so as to receive the lower quadrilateral end of the post when the post is in its deployed position and which receiver is also protected from exposure to the environment by the cover for the trench; and,

a clamping bar and seal;

> wherein the flexible wall is attached to the posts and the lower end of the flexible wall being attached between the clamping bar and the seal

Case 1:20-cv-21350-CMA   Document 19   Entered on FLSD Docket 06/08/2020   Page 8 of 37

> to the mounting plate within the trench to prevent the passage of
> fluid beyond the flexible wall.

(Ex. 1 ('314 patent), claim 1.)

29.     The '316 patent is entitled "Extendible Flexible Flood Barrier," issued on

September 27, 2016, and names David Phillip Cadogan, Jonathan Michael Hinkle and Jeffrey

Lewis Roushey as inventors.

30.     The '316 patent describes flexible, deployable flood mitigation products made of

membrane material and support posts that together are designed to form a leak-free barrier

against flood water or other fluids.  The barrier is movable between a stowed and deployed

position.  The flexible wall is stored in a container and when deployed, can extend to cover the

width of the opening.  The invention described in the '316 patent can be used to protect areas

susceptible to flooding, including building entrances and transit system stairwells.

31.     By way of example, claim 1 of the '316 patent recites:

> 1. An extendible flexible flood barrier comprising:
>
> a flexible wall comprising at least one membrane component and at least
>     one textile component, said flexible wall being attached to a vertical
>     anchor post with a mounting plate;
>
> a storage container that is integral with the anchor post and holds the flexible
>     wall when stowed
>
> a receiver post that the flexible wall is attached to with a mounting plate
>     when extended; and,
>
> a ground skirt, said ground skirt comprising an extension of the flexible
>     wall, the ground skirt lays horizontally on the ground when the
>     flexible wall is deployed in a vertical orientation.

(Ex. 2 ('316 patent), claim 1.)

32.    The '423 patent, entitled "Deployable Flexible Flood Mitigation Device," issued on April 5, 2016, and names David Phillip Cadogan, Jonathan Michael Hinkle, Jeffrey Lewis Roushey, Tony Ray McKee and Ralph Olav Elgesem as inventors.

33.    The '423 patent describes flexible, deployable flood mitigation products that include a textile/membrane panel.  The panel is configured to move between an opened position and a closed position, and when in the closed position, forms a barrier against flood water.  The panel can open and close by virtue of a manually or electrically operated spool or the panel can be manually folded for storage.  The invention described in the '423 patent can be used in any orientation and shaped to fit any opening.  The panel is intended for various areas susceptible to flooding, including subway tunnels, vehicular tunnels, and stairwells.

34.    By way of example, claim 1 of the '423 patent recites:

1.  A deployable flood-gate comprising:

a flexible door comprising at least one member selected from the group consisting of a textile, a membrane and combinations thereof;

a rigid perimeter structure comprising a guide rail that guides deployment of the door;

the perimeter structure further comprising a track that supports loading on and sealing of the flexible door against hydrostatic pressure; the track comprising an opening to permit the flexible door member to extend through the opening;

said door further comprising an integral edge sealing section provided interiorly of the track and of a size larger than the opening, such that the integral edge sealing section cannot be pulled out of the track through the opening, which integral edge sealing section is deformable and presents a broader sealing area in direct contact with the track than the sealing area presented by the flexible door member itself; and,

a storage container for the flexible door with deployment and retraction mechanisms:

9

> wherein at least some of the perimeter of the flexible door is comprised of
> the integral edge sealing section in the form of a flexible deadman,
> which deadman is integrally connected to structural support and
> pressure retention layers of the flexible door, and which deadman is
> deformable and presents a broader sealing area in direct contact with
> the track than the sealing area presented by the flexible door member
> itself.

(Ex. 3 ('423 patent), claim 1.)

**The Accused Products**

35.     FloodBarrier has made, offered for sale, and upon information and belief used and
sold, flexible, deployable flood mitigation products to its customers (referred to herein as the
"Accused Products").  At least some of these customers are contractors who have bid on Port
Authority flood prevention or mitigation projects.

36.     Many of the specific details about the Accused Products are not publicly available
or available to ILC Dover.  For example, the Accused Products installed at the World Trade
Center in New York City have rarely been deployed in public view.  Instead, they almost always
are in their "stored" configuration, for example in trenches with covers secured by multiple bolts,
or in a configuration where their flexible barriers are obscured by covers.  Moreover, on
information and belief, many of the Accused Products, like ILC Dover's products (*see* Paragraph
19 above), are custom designed for the particular location in which they will be installed.  ILC
Dover has undertaken its best efforts in good faith to investigate the installed Accused Products.

37.     Examples of the Accused products are described on a version of FloodBarrier's
website, https://floodbarrier.com/flex-membrane/, that was accessed in May, 2019, and which is
attached as Exhibit 4.  Exhibit 4 contains information about one of FloodBarrier's product lines:

# Flexible Flood Membrane Systems

Among the easiest, lightest a fastest to deploy, we believe that FloodBarrier's Flexible membrane systems are the best in the world. From a single doorway to a multi-lane tunnel entrance, our flexible systems are ridiculously strong, amazingly watertight and very easy to deploy.

38.    Exhibit 4 further describes FloodBarrier's "system" as "based upon Honeywell's Spectra Fiber, a UV Stable lightweight ultra-strong fiber woven to FloodBarrier specifications and coated to ensure a long-term waterproof material":

## Construction

The material utilized in our system is based upon Honeywell's Spectra Fiber, a UV Stable lightweight ultra-strong fiber woven to FloodBarrier specifications and coated to ensure a long-term waterproof material.

Spectra fiber's lightweight strength and versatility make it an ideal solution for virtually every rope and cordage requirement. One of the world's strongest and lightest fibers, pound-for-pound, it is fifteen times stronger than steel, more durable than polyester, and has a specific strength that is 40 percent greater than aramid fiber.

39.    Exhibit 4 further describes this combination of textile material and coating as being "mated with ultra strong metal materials with known engineering, this is the best flexible membrane for your needs":

11

Hydrophobic, so ropes will not absorb moisture or deteriorate in water Naturally buoyant, making it ideal for various marine and offshore uses No corrosion, superior chemical resistance, increased abrasion

resistance and excellent flex fatigue, meaning products last longer and maintenance costs are lower.

Mated with ultra strong metal materials with known engineering, this is the best flexible membrane for your needs. When stored properly, the life expectancy of this product is between 15-20 years.

40.    The photographs on pages 2 and 3 in Exhibit 4 show examples of these "systems"

deployed as flexible walls with the walls attached at their ends to vertical posts:





41.     The photograph on page 3 of Exhibit 4 illustrates a skirt portion of the system (the extension of the flexible wall onto the ground), which on information and belief is secured by an anchor when the system is deployed.

42.     Exhibit 4 further states that "our flexible membrane systems practically deploy themselves.  We offer vertical, side and overhead deployment systems":

## Installation

Depending on the system selected, our flexible membrane systems practically deploy themselves. We offer vertical, side and overhead deployment systems and are working with a national U.S. commercial door manufacturer to design Irma into the door as an integral flood system.

43.     On information and belief, FloodBarrier has attempted to copy and reverse engineer several of ILC Dover's flexible, deployable flood mitigation products.

44.     On information and belief, FloodBarrier has represented to actual and potential customers, contractors and end users (for example those involved in installing and deploying flood mitigation products at Port Authority locations), in the course of selling or attempting to sell its flexible, deployable flood mitigation products, that its products are comparable, equal and equivalent to ILC Dover's flexible, deployable flood mitigation products.

**ILC Dover's Notice of the Asserted Patents to FloodBarrier**

45.     In a letter dated August 15, 2018, ILC Dover provided written notice to FloodBarrier of ILC Dover's rights in the Asserted Patents, provided copies of the Asserted Patents, and warned FloodBarrier that ILC Dover may seek the assistance of the federal courts to enforce those rights.  A true and correct copy of this letter is attached as Exhibit 5.

46.     FloodBarrier therefore has had knowledge of ILC Dover's Asserted Patents at least since approximately mid-August, 2018, but on information and belief has continued its infringing activity despite this knowledge.

## COUNT 1

**(Direct infringement of the '314 patent pursuant to 35 U.S.C. § 271(a))**

47.     The '314 patent is valid, enforceable, and was duly issued on September 27, 2016 in full compliance with Title 35 of the United States Code.

48.     All rights, title and interest in the '314 patent have been assigned to ILC Dover, who is the sole owner of the '314 patent.

49.     Upon information and belief, FloodBarrier directly infringes, either literally or under the doctrine of equivalents, at least claims 1, 2, 4, 5, 7, 8, 12, 13, 15, 24 and 25 of the '314 patent by making, using, offering for sale and selling its Accused Products within the United States without the authorization of ILC Dover.  In discovery, ILC Dover has sought, but not yet

received, technical details about FloodBarrier's Accused Products, and reserves the right to assert any of the claims of the '314 patent once it receives such discovery and has a chance to assess it.

50.     The Accused Products contain the elements of, by way of example, claim 1 of the '314 patent.

51.     Page 1 of Exhibit 6 shows a portion of a cover over a trench at the World Trade Center in New York City that is inscribed "FLOODBARRIER, INC., 7314 NW 46 Street, Miami, Florida 33166."

52.     Page 2 of Exhibit 6 shows a further inscription in the cover that on information and belief states "JOB NUMBER 17-042B, MODEL FLEXIBLE TYPE A, MAN 5/2019, SERIAL 17-042B-300-62-TC-E, OPENING 300-62."

53.     "FLEXIBLE" in the foregoing Paragraph refers to a deployable membrane flexible wall for fluid retention, which by necessity comprises a lower end.

54.     Page 3 of Exhibit 6 shows rigid posts that on information and belief are being installed in a FloodBarrier installation similar to the one described in Paragraphs 51-52 above, and which support such a flexible wall when deployed.

55.     As also shown on page 3 of Exhibit 6, the posts are roughly square shaped and thus comprise a quadrilateral exterior surface on at least a lower end of each post.

56.     On information and belief, the posts are initially contained within a trench and beneath a trench cover when the posts are in a stowed position such that the posts are protected from exposure to the environment by the cover for the trench.

57.     For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, Drawing Number A604 shows in the "TRENCH DETAIL – NON-DEPLOYED" view

a square shaped "S.S. POST" stored in the trench beneath a "MTL. COVER PLATE"; and further a "RIGID NEOPRENE GASKET" just beneath the edge of the cover plate:



58.     Page 3 of Exhibit 6 also shows receivers for the posts that are roughly square shaped (i.e., quadrilateral in shape) and that appear sized to receive the posts.

59.     On information and belief, in installed systems, the receivers are each integrally installed in a mounting plate at the bottom of a trench and sized so as to receive the lower quadrilateral end of the posts when the posts are in their deployed positions.

60.     For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, Drawing Number A604 shows in the "TRENCH DETAIL – DEPLOYED" view a "S.S. RECEIVER PLATE" at the bottom of the trench, a "S.S. POST SLEEVE" just above the plate, and the "S.S. POST" within the sleeve.

61.     In the drawings for the Port Authority's Contract No. WTC - 964.944, Drawing Number A604 shows in the "TRENCH DETAIL – NON- DEPLOYED" view a "MTL. COVER PLATE" covering the trench and a "RIGID NEOPRENE GASKET" just beneath the edge of the

16

cover plate. By virtue of the receivers being installed at the bottom of a trench, the receivers are thus protected from exposure to the environment by the cover for the trench.

62. On information and belief, and by necessity, the flexible wall is attached to the types of posts described in Paragraphs 54-60 above when deployed.

63. For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, Drawing Number A604 shows in the "TRENCH DETAIL – DEPLOYED" view a "FLEXIBLE MEMBRANE" directly adjacent to a "S.S. POST."

64. On information and belief, and by virtue of the fact that such systems are designed to prevent the passage of water (e.g., so that water cannot readily pass below the flexible wall), the FloodBarrier systems described above in Paragraphs 51-63 contain a clamping bar and seal, and when the systems are deployed, the lower end of the flexible wall is attached between the clamping bar and the seal to the mounting plate within the trench to prevent the passage of fluid beyond the flexible wall.

65. For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, Drawing Number A604 shows in the "TRENCH DETAIL – DEPLOYED" view a "S.S. CLAMP BAR" with the lower end of a "FLEXIBLE MEMBRANE" passing under the clamp bar so it is mounted adjacent to and up against a "S.S. RECEIVER PLATE," a "FLUSH GASKETED BOLT" passing through the flexible membrane and clamp bar, and a "DEADMAN" on or near the lower end of the flexible membrane.

66. FloodBarrier became aware of the '314 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

67. Upon information and belief, the direct infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '314 patent and without a

reasonable basis for believing it would not be liable for directly infringing at least one claim of the '314 patent.

68.    By reason of FloodBarrier's direct infringement of at least one claim of the '314 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

69.    ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's infringing activities and FloodBarrier will continue to directly infringe at least one claim of the '314 patent unless enjoined by this Court.

70.    Unless FloodBarrier is enjoined from actively infringing the '314 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 2

**(Induced infringement of the '314 patent pursuant to 35 U.S.C. § 271(b))**

71.    The '314 patent is valid, enforceable, and was duly issued on September 27, 2016 in full compliance with Title 35 of the United States Code.

72.    All rights, title and interest in the '314 patent have been assigned to ILC Dover, who is the sole owner of the '314 patent.

73.    FloodBarrier became aware of the '314 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

74.    Upon information and belief, FloodBarrier has manufactured, used, offered for sale and sold its Accused Products within the United States without the authorization of ILC Dover.  FloodBarrier did so while knowing that Accused Products infringe at least one claim of the '314 patent.

75.    FloodBarrier has actively and knowingly, with specific intent to do so, induced its customers, purchasers, end users and others receiving Accused Products to infringe at least one

claim of the '314 patent by knowingly, and with specific intent to do so, instructing and encouraging its customers, purchasers, end users and others receiving Accused Products to install, operate, use, and sell Accused Products, while FloodBarrier knew such actions would infringe at least one claim of the '314 patent.

76.     Upon information and belief, and by way of example, FloodBarrier has provided instructions, drawings, and guidelines to the Port Authority and its contractors and sub-contractors to actively induce the installation and use of Accused Products that infringe at least one claim of the '314 patent (*see* Paragraphs 50-65 above).

77.     The foregoing actions by FloodBarrier have constituted induced infringement of at least one claim of the '314 patent.

78.     Upon information and belief, the induced infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '314 patent and without a reasonable basis for believing it would not be liable for inducing infringement of at least one claim of the '314 patent.

79.     By reason of FloodBarrier's inducing others' infringement of at least one claim of the '314 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

80.     ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's infringing activities and FloodBarrier will continue to induce others' infringement of at least one claim of the '314 patent unless enjoined by this Court.

81.     Unless FloodBarrier is enjoined from inducing infringement of the '314 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 3

**(Contributory infringement of the '314 patent pursuant to 35 U.S.C § 271(c))**

82.     The '314 patent is valid, enforceable and was duly issued on September 27, 2016 in full compliance with Title 35 of the United States Code.

83.     All rights, title and interest in the '314 patent have been assigned to ILC Dover, who is the sole owner of the '314 patent.

84.     FloodBarrier became aware of the '314 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

85.     Upon information and belief, FloodBarrier has manufactured, used, offered for sale and sold its Accused Products within the United States without the authorization of ILC Dover.

86.     The Accused Products contain components for use in practicing at least one claim of the '314 patent that constitute a material part of the inventions claimed therein.  For example, FloodBarrier has provided flood mitigation products to the Port Authority, and its contractors and sub-contractors that contain the components described in Paragraphs 51-65 above.

87.     FloodBarrier has offered for sale and sold its Accused Products within the United States while knowing, and with specific intent, that components of the Accused Products that are material parts of the inventions claimed in the '314 patent are especially made for use in infringing at least one claim of the '314 patent and are not a staple article or commodity suitable for substantial non-infringing use.

88.     The foregoing actions by FloodBarrier have constituted contributory infringement of at least one claim of the '314 patent.

89.     Upon information and belief, the contributory infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '314 patent and without a

reasonable basis for believing it would not be liable for contributing to the infringement of at least one claim of the '314 patent.

90.     By reason of FloodBarrier's contributory infringement of at least one claim of the '314 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

91.     ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's contributory infringement and FloodBarrier will continue to indirectly infringe at least one claim of the '314 patent unless enjoined by this Court.

92.     Unless FloodBarrier is enjoined from actively contributing to the infringement of the '314 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 4

### (Direct infringement of the '316 patent pursuant to 35 U.S.C. § 271(a))

93.     The '316 patent is valid, enforceable, and was duly issued on September 27, 2016 in full compliance with Title 35 of the United States Code.

94.     All rights, title and interest in the '316 patent have been assigned to ILC Dover, who is the sole owner of the '316 patent.

95.     Upon information and belief, FloodBarrier directly infringes, either literally or under the doctrine of equivalents, at least claims 1, 2, 3, 5, 6, 12, and 18 of the '316 patent by making, using, offering for sale and selling its Accused Products within the United States without the authorization of ILC Dover.  In discovery, ILC Dover has sought, but not yet received, technical details about FloodBarrier's Accused Products, and reserves the right to assert any of the claims of the '316 patent once it receives such discovery and has a chance to assess it.

96.     The Accused Products contain the elements of, by way of example, claim 1 of the '316 patent.

97.     Page 1 of Exhibit 4 contains the heading "Flexible Flood Membrane Systems."

98.     Pages 2 and 3 of Exhibit 4 depict such systems and show flood barriers that have flexible walls.

99.     Page 2 of Exhibit 4 describes the "Flexible Flood Membrane" as "based upon Honeywell's Spectra Fiber, a UV Stable lightweight ultra-strong fiber woven to FloodBarrier specifications and coated to ensure a long-term waterproof material."

100.     Pages 2 and 3 of Exhibit 4 depict extended flexible walls attached to two vertical posts, with on information and belief, mounting plates (page 4 of Exhibit 4 describes the "flexible membrane" as "[m]ated with ultra strong metal materials with known engineering").

101.     Page 4 of Exhibit 4 further describes that the flexible walls "practically deploy themselves," meaning on information and belief that they are extendible.

102.     Page 4 of Exhibit 4 further describes the flexible walls as "stored" and that FloodBarrier offers "vertical, side and overhead deployment systems," which on information and belief, when installed, comprise, in at least some configurations, a storage container that is integral with an anchor post that holds the flexible wall when it is stored.  Page 1 of Exhibit 4 further describes the systems as "fastest to deploy."

103.     Page 3 of Exhibit 4 shows an extension of the flexible wall at the bottom of the wall, that is on information and belief lying on the ground, which is a ground skirt laying horizontally on the ground while the flexible wall is deployed in a vertical orientation.

104.     FloodBarrier became aware of the '316 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

105. Upon information and belief, the direct infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '316 patent and without a reasonable basis for believing it would not be liable for directly infringing at least one claim of the '316 patent.

106. By reason of FloodBarrier's direct infringement of at least one claim of the '316 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

107. ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's infringing activities and FloodBarrier will continue to directly infringe at least one claim of the '316 patent unless enjoined by this Court.

108. Unless FloodBarrier is enjoined from actively infringing the '316 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 5

### (Induced infringement of the '316 patent pursuant to 35 U.S.C. § 271(b))

109. The '316 patent is valid, enforceable, and was duly issued on September 27, 2016 in full compliance with Title 35 of the United States Code.

110. All rights, title and interest in the '316 patent have been assigned to ILC Dover, who is the sole owner of the '316 patent.

111. FloodBarrier became aware of the '316 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

112. Upon information and belief, FloodBarrier has manufactured, used, offered for sale and sold its Accused Products within the United States without the authorization of ILC Dover. FloodBarrier did so while knowing that the Accused Products infringe at least one claim of the '316 patent.

23

113.    FloodBarrier has actively and knowingly, with specific intent to do so, induced its customers, purchasers, end users and others receiving Accused Products to infringe at least one claim of the '316 patent by knowingly, and with specific intent to do so, instructing and encouraging its customers, purchasers, end users and others receiving Accused Products to install, operate, use, and sell Accused Products, while FloodBarrier knew such actions would infringe at least one claim of the '316 patent.

114.    Upon information and belief, and by way of example, FloodBarrier has provided instructions, drawings, and guidelines to its customers and its customers' customers to actively induce their installation and use of Accused Products that infringe at least one claim of the '316 patent (*see* Paragraphs 96-103 above).

115.    The foregoing actions by FloodBarrier have constituted induced infringement of at least one claim of the '316 patent.

116.    Upon information and belief, the induced infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '316 patent and without a reasonable basis for believing it would not be liable for inducing infringement of at least one claim of the '316 patent.

117.    By reason of FloodBarrier's inducing others' infringement of at least one claim of the '316 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

118.    ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's infringing activities and FloodBarrier will continue to induce others' infringement of at least one claim of the '316 patent unless enjoined by this Court.

119.    Unless FloodBarrier is enjoined from inducing infringement of the '316 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## <u>COUNT 6</u>

**(Contributory infringement of the '316 patent pursuant to 35 U.S.C § 271(c))**

120.    The '316 patent is valid, enforceable and was duly issued on September 27, 2016 in full compliance with Title 35 of the United States Code.

121.    All rights, title and interest in the '316 patent have been assigned to ILC Dover, who is the sole owner of the '316 patent.

122.    FloodBarrier became aware of the '316 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

123.    Upon information and belief, FloodBarrier has manufactured, used, offered for sale and sold its Accused Products within the United States without the authorization of ILC Dover.

124.    The Accused Products contain components for use in practicing at least one claim of the '316 patent that constitute a material part of the inventions claimed therein.  By way of example, and on information and belief, FloodBarrier has provided flood mitigation products to its customers that contain the components described in Paragraphs 97-103 above.

125.    FloodBarrier has offered for sale and sold its Accused Products within the United States while knowing, and with specific intent, that components of the Accused Products that are material parts of the inventions claimed in the '316 patent are especially made for use in infringing at least one claim of the '316 patent and are not a staple article or commodity suitable for substantial non-infringing use.

126.    The foregoing actions by FloodBarrier have constituted contributory infringement of at least one claim of the '316 patent.

127.   Upon information and belief, the contributory infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '316 patent and without a reasonable basis for believing it would not be liable for contributing to the infringement of at least one claim of the '316 patent.

128.   By reason of FloodBarrier's contributory infringement of at least one claim of the '316 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

129.   ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's contributory infringement and FloodBarrier will continue to indirectly infringe at least one claim of the '316 patent unless enjoined by this Court.

130.   Unless FloodBarrier is enjoined from actively contributing to the infringement of the '316 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 7

### (Direct infringement of the '423 patent pursuant to 35 U.S.C. § 271(a))

131.   The '423 patent is valid, enforceable, and was duly issued on April 5, 2016 in full compliance with Title 35 of the United States Code.

132.   All rights, title and interest in the '423 patent have been assigned to ILC Dover, who is the sole owner of the '423 patent.

133.   Upon information and belief, FloodBarrier directly infringes, either literally or under the doctrine of equivalents, at least claims 1, 2, 4, 8, 11, 13, 15, 16, 21 and 22 of the '423 patent by making, using, offering for sale and selling the Accused Products within the United States without the authorization of ILC Dover.  In discovery, ILC Dover has sought, but not yet

received, technical details about FloodBarrier's Accused Products, and reserves the right to assert any of the claims of the '423 patent once it receives such discovery and has a chance to assess it.

134.    Upon information and belief, the Accused Products contain the elements of, by way of example, claim 1 of the '423 patent.

135.    Pages 4 - 6 of Exhibit 6 show portions of a FloodBarrier system at the World Trade Center in New York City comprising a deployable flood gate with a flexible door comprising interlaced textile straps.

136.    Pages 4 – 6 of Exhibit 6 further show that the assembly is contained within a rigid frame and that the vertical edges of the flexible door are within rails that are part of the frame, so as to guide the door when it is deployed.  Page 7 of Exhibit 6 shows a portion of one of the rails.

137.    In addition, in the drawings for the Port Authority's Contract No. WTC - 964.944, addended Drawing Number A605 shows in the "JAMB DETAIL – DEPLOYED" view a "S.S. BACK PLATE" mounted on an "EXISTING CONCRETE WALL"; a "REPLACEMENT MTL. PANEL" that also appears to be mounted at least in part on the existing concrete wall; an "S.S. ANGLE" mounted on the back plate in part; and a "GATE GUIDE" assembly mounted on the back plate and angle:



138.    "HEAD DETAIL" views from the same addended Drawing Number A605 shows

several of these details in another view:



139.    In the drawings for the Port Authority's Contract No. WTC - 964.944, addended

Drawing Number A605 also shows in the "JAMB DETAIL – DEPLOYED" view a "FLEXIBLE

MEMBRANE," the edge or perimeter of which is extending into a track in the gate guide

through an opening in the track, and which is in the form of a "DEADMAN" that is within the track.

140. On information and belief, and by virtue of the fact that the system is designed to prevent or at least slow the flow of water beyond the flexible door, the track, with the portion of the door edge and deadman deployed inside, supports loading on and sealing of the flexible door against hydrostatic pressure.

141. On information and belief, and by virtue of the fact that the system is designed to prevent or at least slow the flow of water beyond the flexible door, the edge or perimeter of the flexible door within the track that together with other materials is in the form of a deadman, provides an integral edge sealing section within the track that is larger than the opening in the track (as shown in the "DEPLOYED" drawings in Paragraphs 137-138 above), that cannot be pulled out of the track through the opening and presents a broader sealing area in direct contact with the track than the sealing area presented by the flexible door member itself. Moreover, in order to provide the required sealing, the deadman must be deformable so that it seals within the track when there is a hydrostatic load on the flexible door. For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, addended Drawing Number A605 does not show in the "JAMB DETAIL – DEPLOYED" view any type of seal in the track or on the flexible membrane or on the doorman; and on page 6 of Exhibit 6, the outer layer of the deadman appears to be the membrane layer.

142. On information and belief, and as shown in part on page 6 of Exhibit 6 (i.e., where the membrane (black) layer appears to be wrapped around the core of the deadman), the deadman is integrally connected to the structural support and pressure retention layers of the flexible door.

143.    By virtue of the fact that the flexible door and deadman are rolled up when not deployed, and conversely extended when deployed, the integral edge sealing section/deadman must be flexible.  For example, pages 4 – 6 of Exhibit 6 further show the flexible door in a non-deployed state, and in contrast, page 8 of Exhibit 6 shows the flexible door in a partially deployed state.

144.    On information and belief, at least certain of the installed FloodBarrier systems like the ones described above in Paragraphs 135-143 include a storage container for the flexible door.  For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, addended Drawing Number A605 shows in the "HEAD DETAIL – NON-DEPLOYED" view a "S.S. SHROUD," within which is the rolled-up flexible door:



145. Also, page 9 of Exhibit 6 shows a FloodBarrier flexible door in a covering that appears to be similar to the shroud described in the preceding Paragraph.

146. By virtue of the fact the flexible doors can be stored or alternatively deployed (see the drawings above in Paragraphs 137, 138 and 144), there are deployment and retraction mechanisms for the door. For example, in the drawings for the Port Authority's Contract No. WTC - 964.944, addended Drawing Number A605 shows in the "HEAD DETAIL – DEPLOYED" and "HEAD DETAIL – NON-DEPLOYED" views a 'FLEXIBLE MEMBRANE SPOOL," a "ROLLER," a "S.S. SUPPORT BEAM," and other unidentified structures that on information and belief make up part of the deployment and retraction mechanisms.

147. FloodBarrier became aware of the '423 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

148. Upon information and belief, the direct infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '423 patent and without a reasonable basis for believing it would not be liable for directly infringing at least one claim of the '423 patent.

149. By reason of FloodBarrier's direct infringement of at least one claim of the '423 Patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

150. ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's infringing activities and FloodBarrier will continue to directly infringe at least one claim of the '423 patent unless enjoined by this Court.

151. Unless FloodBarrier is enjoined from actively infringing the '423 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 8

### (Induced infringement of the '423 patent pursuant to 35 U.S.C. § 271(b))

152.   The '423 patent is valid, enforceable, and was duly issued on April 5, 2016 in full compliance with Title 35 of the United States Code.

153.   All rights, title and interest in the '423 patent have been assigned to ILC Dover, who is the sole owner of the '423 patent.

154.   FloodBarrier became aware of the '423 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

155.   Upon information and belief, FloodBarrier has manufactured, used, offered for sale and sold its Accused Products within the United States without the authorization of ILC Dover.  FloodBarrier did so while knowing that the Accused Products infringe at least one claim of the '423 patent.

156.   FloodBarrier has actively and knowingly, with specific intent to do so, induced its customers, purchasers, end users and others receiving Accused Products to infringe at least one claim of the '423 patent by knowingly, and with specific intent to do so, instructing and encouraging its customers, purchasers, end users and others receiving Accused Products to install, operate, use, and sell Accused Products, while FloodBarrier knew such actions would infringe at least one claim of the '423 patent.

157.   Upon information and belief, and by way of example, FloodBarrier has provided instructions, drawings, and guidelines to the Port Authority and its contractors and sub-contractors to actively induce their installation and use of Accused Products that infringe at least one claim of the '423 patent (*see* Paragraphs 134-146-103 above).

158.   The foregoing actions by FloodBarrier have constituted induced infringement of at least one claim of the '423 patent.

159.     Upon information and belief, the induced infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '423 patent and without a reasonable basis for believing it would not be liable for inducing infringement of at least one claim of the '423 patent.

160.     By reason of FloodBarrier's inducing others' infringement of at least one claim of the '423 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

161.     ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's infringing activities and FloodBarrier will continue to induce others' infringement of at least one claim of the '423 patent unless enjoined by this Court.

162.     Unless FloodBarrier is enjoined from inducing infringement of the '423 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## COUNT 9

**(Contributory infringement of the '423 patent pursuant to 35 U.S.C § 271(c))**

163.     The '423 patent is valid, enforceable and was duly issued on April 5, 2016 in full compliance with Title 35 of the United States Code.

164.     All rights, title and interest in the '423 patent have been assigned to ILC Dover, who is the sole owner of the '423 patent.

165.     FloodBarrier became aware of the '423 patent no later than approximately August 16, 2018 when it was provided with the letter attached hereto as Exhibit 5.

166.     Upon information and belief, FloodBarrier has manufactured, used, offered for sale and sold its Accused Products within the United States without the authorization of ILC Dover.

167. The Accused Products contain components for use in practicing at least one claim of the '423 patent that constitute a material part of the inventions claimed therein. For example, on information and belief, FloodBarrier has provided flood mitigation products to the Port Authority and its contractors and sub-contractors that contain the components described in Paragraphs 135-146 above.

168. FloodBarrier has offered for sale and sold its Accused Products within the United States while knowing, and with specific intent, that components of the Accused Products that are material parts of the inventions claimed in the '423 patent are especially made for use in infringing at least one claim of the '423 patent and are not a staple article or commodity suitable for substantial non-infringing use.

169. The foregoing actions by FloodBarrier have constituted contributory infringement of at least one claim of the '423 patent.

170. Upon information and belief, the contributory infringement by FloodBarrier has been willful, intentional, and deliberate with full knowledge of the '423 patent and without a reasonable basis for believing it would not be liable for contributing to the infringement of at least one claim of the '423 patent.

171. By reason of FloodBarrier's contributory infringement of at least one claim of the '423 patent, ILC Dover has been damaged and seeks monetary compensation for its damage in an amount to be proven at trial, but not less than a reasonable royalty.

172. ILC Dover has lost, and is continuing to lose, market share as a direct result of FloodBarrier's contributory infringement and FloodBarrier will continue to indirectly infringe at least one claim of the '423 patent unless enjoined by this Court.

173.     Unless FloodBarrier is enjoined from actively contributing to the infringement of the '423 patent, ILC Dover will suffer irreparable injury for which damages are an inadequate remedy.

## PRAYER FOR RELIEF

ILC Dover respectfully prays for the following relief:

A.     That judgment be entered in favor of ILC Dover and against FloodBarrier on every count of the complaint;

B.     That judgment be entered holding that Defendant has infringed and is infringing at least one claim of the Asserted Patents; and has induced infringement and is inducing infringement of at least one claim of the Asserted Patents; and has contributed to infringement and is contributing to infringement of at least one claim of the Asserted Patents;

C.     That a preliminary and permanent injunction be issued against Defendant, its officers, employees, agents, servants, attorneys, instrumentalities, and those in privity with them, from infringing the claims of the Asserted Patents, or inducing infringement of the claims of the Asserted Patents, or contributing to the infringement of the claims of the Asserted Patents, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

D.     That an award to ILC Dover be granted of such past damages, not less than a reasonable royalty, as it shall prove at trial against Defendant that is adequate to fully compensate ILC Dover for Defendant's infringement of the claims of the Asserted Patents;

E.     That it be found that Defendant's infringement of the Asserted Patents has been willful, wanton, and deliberate and that damages be increased up to treble on this basis or for any other basis in accordance with the law pursuant to 35 U.S.C. § 284;

F.     That this case be declared "exceptional" and that ILC Dover be awarded its costs and reasonable attorney's fees on this basis, as provided by 35 U.S.C. § 285 and other applicable authority including the Court's inherent powers;

G.     That an accounting be performed of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the date of first infringement of the claims of the asserted patents;

H.     That this Court award Plaintiff its costs and expenses that it incurs in prosecuting this action; and

I.     That this Court grant such further and other relief as the Court may deem proper and just.

Date:  June 8, 2020

Respectfully submitted,

By: */s/ David Brafman*

David Brafman (Florida Bar No. 68289)
Email: david.brafman@akerman.com
Amy Price (Florida Bar No. 91959)
Email: amy.price@akerman.com
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel.: (561) 653-5000 / Fax: (561) 659-6313

- and -

John R. Lane *(Admitted Pro Hac Vice)*
Email: jlane@fr.com
FISH & RICHARDSON P.C.
1221 McKinney Street, Suite 2800
Houston, TX 77010
Tel: 713-654-5300 / Fax: 713-652-0109

*Counsel for Plaintiff ILC Dover LP*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2020 a true and correct copy of the foregoing was served by

filing it through the Court's ECF system to:

> Oliver Ruiz
> Jonathan Woodard
> MALLOY & MALLOY, P.L.
> oruiz@malloylaw.com
> jwoodard@malloylaw.com

*/s/ John R. Lane*
John R. Lane